# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

JACQUELINE JOHNSON, individually
and as a representative of the class,   Civil Action No._____

       Plaintiff,   **COMPLAINT – CLASS ACTION**
                                                **(JURY TRIAL DEMANDED)**

v.

CASEY'S GENERAL STORES, INC.,

       Defendant.

Jacqueline Johnson ("Plaintiff"), by and through her attorneys, on behalf of herself and the class set forth below, brings the following Class Action Complaint against Casey's General Stores, Inc. ("Defendant" or "Casey's").

## INTRODUCTION

1. This consumer class action is brought under the Fair Credit Reporting Act ("FCRA") against a company who routinely and systematically violates the FCRA's basic protections by failing to provide the "stand-alone" disclosure required by the FCRA. As Defendant's practices were routine and systematic, Plaintiff asserts claims for damages on behalf of herself and a class of similarly situated individuals on whom Casey's caused a consumer report to be procured without first providing the required stand-alone disclosure.

## THE PARTIES

2. Plaintiff Jacqueline Johnson is an adult resident of Douglas County in Missouri.

3. Defendant Casey's General Stores, Inc. is a publicly-traded corporation with at least 1,808 convenience and/or general stores in 14 states, including in this District. Defendant's stores offer customers hot food, such as pizza, with Defendant offering delivery services at

1

approximately 300 of its locations.  Defendant is incorporated in Iowa.

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff lives in this District, applied to work for Defendant in this District, and a substantial part of the events or omissions giving rise to this claim occurred in this District.

## STATUTORY BACKGROUND

6. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

7. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

8. Congress was particularly concerned about the use of background reports in the employment context, and therefore defined the term "consumer reports" to explicitly include background reports procured for employment purposes.  *See* 15 U.S.C. § 1681a(d)(1)(B).

9. Through the FCRA, Congress required employers to make a clear and conspicuous written disclosure to job applicants, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes.  15 U.S.C. § 1681b(b)(2).

2

10. Specifically, Congress made it unlawful for an employer or prospective employer to "procure, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless …a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i) (emphasis added). This requirement is frequently referred to as the "stand-alone disclosure requirement."

11. Many other provisions of the FCRA are also notice provisions. *See* 15 U.S.C. § 1681b(b)(3)(A) (pre-adverse employment action notice requirement); § 1681b(4)(B) (notification of national security investigation); § 1681c(h) (notification of address discrepancy); § 1681d(a) (disclosure of investigative report); § 1681g (full file disclosure to consumers); § 1681k(a)(1) (disclosure regarding the use of public record information); § 1681h (form and conditions of disclosure); § 1681m(a) (notice of adverse action).

12. Like the other notice provisions in the FCRA, the stand-alone disclosure provision puts consumers on notice that a report about them may be prepared. This knowledge enables consumers to exercise a variety of other substantive rights conferred by the statute, many of which work to ensure accuracy, confidentiality, and fairness. 15 U.S.C. § 1681c(a) (limiting temporal scope of information that can be reported); § 1681e(b) (mandating that consumer reporting agencies employ procedures to ensure "maximum possible accuracy" in reports); § 1681k (requiring consumer reporting agencies that report public record information to employers to either provide notice to the consumer that information is being reported or have "strict procedures" to ensure that information is "complete and up to date"); § 1681i (requiring that consumer reporting agencies investigate any disputed information); § 1681g (requiring that consumer reporting agencies provide a complete copy of the consumer's file to the consumer).

13. Without a clear notice that a consumer report is going to be procured on them, applicants are hindered in their ability to preserve their privacy, and to correct errors or other problems with the reports.

14. As discussed below, Defendant routinely violated the FCRA, and consumers' rights, by failing to provide the required stand-alone disclosure before procuring consumer reports for employment purposes.

## ALLEGATIONS RELATING TO PLAINTIFF

15. On or around February 25, 2013, Plaintiff applied to work as a pizza delivery driver for Defendant's store location in Mountain Grove, Missouri.

16. Plaintiff had previously worked for Defendant in different customer service job positions, but Defendant required her to apply anew in order to be considered for the pizza delivery driver position at the Mountain Grove location.

17. Throughout the two years preceding the filing of this Complaint, Casey's has required applicants for driving and other employment positions at the company to undergo and pass a background check with Defendant.

18. Specifically, during the two years preceding the filing of this Complaint, Casey's has run its background check program with HireRight, Inc. ("HireRight").

19. HireRight is a consumer reporting agency because it sells background reports for employment purposes.

20. On or around February 25, 2013, so that Plaintiff could work for Casey's store in Mountain Grove as a pizza delivery driver, Casey's provided Plaintiff with the "Authorization Form for Consumer Reports FCRA Release," attached hereto as Exhibit 1.

21. On February 25, 2013, Plaintiff signed the Authorization Form for Consumer Reports FCRA Release.

22. The Authorization Form for Consumer Reports FCRA Release contains extraneous information that violates the FCRA's stand-alone disclosure requirement.

23. First, the form contains an authorization for third parties to provide information to Casey's and/or Casey's consumer reporting agency.

24. The FCRA allows only a single exception to the requirement that employers provide applicants and employees with a document consisting solely of the disclosure that a consumer report will be procured for employment purposes. Specifically, the statute states that the disclosure may include a written authorization for the employer to procure the report. 15 U.S.C. 1681b(b)(2)(A) states:

> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—
>
> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
>
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

25. Casey's application, however, goes much farther than merely authorizing Casey's to procure a report. Instead, the form states that the applicant authorizes, "without reservation, *any* party or agency contacted by Casey's, or a consumer reporting agency retained by Casey's to furnish the above mentioned information." (Emphasis added.)

26. The form continues, "You hereby authorize and request, without any reservation, any present or former employer, school, police department, financial institution, division of motor vehicles, consumer reporting agencies, or other persons or agencies having knowledge about you to furnish the consumer reporting agency with any and all background information in

5

their possession regarding you, in order that your employment qualifications may be evaluated."

27. By purporting to authorize everyone and anyone who has any information about the applicant to provide all of that information to Casey's and its consumer reporting agencies, the Authorization Form for Consumer Reports FCRA Release far exceeds the strict limitations of the FCRA.

28. The authorization contained in the Authorization Form for Consumer Reports FCRA Release is not a mere authorization for Casey's to procure a consumer report. Rather, it is a blanket authorization "without reservation" for everyone and anyone possessing information about the applicant to share such information with Casey's and its agents.

29. The only information permitted to appear on a form with the disclosure is the authorization by the consumer for the employer to obtain a consumer report. *See* 15 U.S.C. § 1681b(b)(2)(A).

30. Because the Authorization Form for Consumer Reports FCRA Release includes a vast and limitless release of information that applies to third parties' provision of information, it violates the FCRA.

31. The Authorization Form for Consumer Reports FCRA Release violates the FCRA in other ways as well.

32. The Authorization Form for Consumer Reports FCRA Release violates the FCRA is by including extraneous information. For example, the Authorization Form for Consumer Reports FCRA Release contains statements that are intended "for transport driver applicants only," "for California, Minnesota or Oklahoma applicants only," and "For California applications only." These state-specific and driver-specific statements are not authorization for Casey's to procure a consumer report and are also not disclosures of the fact that a report may be procured for employment purposes. Rather, these statements are extraneous information that

6

renders any disclosure required under the FCRA not "clear and conspicuous" and also not a document consisting "solely" of the disclosure. Accordingly, the inclusion of these statements on the Authorization Form for Consumer Reports FCRA Release violates the FCRA.

33. Finally, the form is a two page form that, on the second page, concludes with spaces for Plaintiff to fill in her personal information. This, too, renders the form something other than a "stand-alone" disclosure and, accordingly, violates the FCRA.

34. The Authorization Form for Consumer Reports FCRA Release was the only document Plaintiff ever received that related to the fact that anyone was going to procure a consumer report on her in connection with the position she was applying for in February 2013.

35. On or around March 6, 2013, Casey's ordered a consumer report on Plaintiff from HireRight. *See* Exhibit 2.

36. On or around March 13, 2013, Casey's obtained a consumer report on Plaintiff for employment purposes from HireRight. *See* Exhibit 2.

## **ALLEGATIONS RELATING TO DEFENDANT'S PRACTICES**

37. More than fifteen years ago, the Federal Trade Commission emphasized that including extraneous information as Defendant did here, is a violation of the FCRA. *Letter from William Haynes, Fed. Trade Comm'n, to Richard W. Hauxwell, CEO Accufax Div.* (June 12, 1998), available at 1998 WL 34323756.

38. Courts that have addressed extraneous information placed in disclosure forms have agreed with the FTC that including such information violates the FCRA's stand-alone disclosure requirement. *See e.g., Miller v. Quest Diagnostics*, No. 2:14-CV-04278-SRB, 2015 WL 545506, at *3 (W.D. Mo. Jan. 28, 2015) (holding plaintiff stated a claim for relief under 15 U.S.C. § 1681b(b)(2)(A) where plaintiffs challenged the inclusion of the state-mandated consumer report information in the disclosure); *Jones v. Halstead Mgmt. Co., LLC*, No. 14-CV-

7

3125VEC, 2015 WL 366244 (S.D.N.Y. Jan. 27, 2015) (holding plaintiff stated a claim for relief under 15 U.S.C. § 1681b(b)(2)(A) where the disclosure included "information regarding time frames within which the applicant must challenge the accuracy of any report; an acknowledgement that 'all employment decisions are based on legitimate non-discriminatory reasons'; the name, address and telephone of 'the nearest unit of the consumer reporting agency designated to handle inquiries regarding the investigative consumer report' [ ]; and all sorts of state-specific disclosures that had nothing to do with Plaintiff's potential employment in New York."); *see also Dunford v. American Databank, Inc.*, No. C 13-03829, 2014 WL 3956774 at *6 (N.D. Cal. Aug. 12, 2014) (finding document that contained a liability release to "not consist solely of the disclosure because it added a paragraph exonerating [the defendant]"); *Avila v. NOW Health Grp., Inc.*, No. 14 C 1551, 2014 WL 3537825 at *2 (N.D. Ill. July 17, 2014) (finding inclusion of liability waivers to be "contrary to the express language of the FCRA, which requires a disclosure 'in a document that consists solely of the disclosure'"); *Singleton v. Domino's Pizza*, No. 11-1823, 2012 WL 245965 at *9 (D. Md. Jan. 25, 2012) ("[B]oth the statutory text and FTC advisory opinions indicate that an employer violates the FCRA by including a liability release in a disclosure document."); *Reardon v. Closetmaid Corp.*, No. 2:-8-cv-01730, 2013 WL 6231606 at *10-11 (W.D. Pa. Dec. 2, 2013) (finding disclosure with liability waiver to be "facially contrary to the statute at hand, and all of the administrative guidance").

39. Defendant knew that it had an obligation to provide a stand-alone disclosure, and that it was not doing so, as evidenced by, among other things, its decision to attempt to provide a disclosure in the first place.

40. By including the extraneous information in its disclosure, Defendant also deviated from a legally binding certification it provided to its consumer reporting agencies.

41. The FCRA requires that, prior to procuring consumer reports, employers must

certify to the consumer reporting agency that they will comply with the FCRA's stand-alone disclosure requirements. *See* 15 U.S.C. § 1681b(b)(1).

42. In accordance with their standard procedures, the consumer reporting agencies from whom Defendant acquired consumer reports during the two years preceding the filing of this Complaint, including HireRight, required Defendant to certify that it would comply with the stand-alone disclosure provisions of the FCRA.

43. Defendant did, in fact, certify to that agency that it would comply with the stand-alone disclosure provisions of the FCRA.

44. In its contract with that agency, Defendant also agreed that before obtaining a consumer report, Defendant would provide a disclosure in writing to the consumer that a consumer report will be obtained for employment purposes and that such disclosure will be made in a document consisting solely of the disclosure.

45. Defendant did not procure Plaintiff's report in connection with any investigation of suspected misconduct relating to employment, or compliance with federal, state, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer.

46. By systematically inserting extraneous information into Plaintiff's and other class members' disclosures, Defendant willfully violated 15 U.S.C. § 1681b(b)(2)(A)(i).

## CLASS ACTION ALLEGATIONS

47. Plaintiff asserts her claims on behalf of the class defined as follows:

All individuals on whom Defendant obtained a consumer report for employment purposes in the two years predating the filing of this Complaint and continuing through the date the class list is prepared.

48. <u>Numerosity</u>: The class is so numerous that joinder of all class members is impracticable. Defendant employs more than 30,000 workers, many of whom are members of

the class.

49. <u>Typicality</u>: Plaintiff's claims are typical of the class members' claims. The FCRA violations committed by Defendant were committed pursuant to uniform policies and procedures, including a policy of repeatedly utilizing the Authorization Form for Consumer Reports FCRA Release. Defendant treated Plaintiff in the same manner as other class members in accordance with its standard policies and practices.

50. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the class, and has retained counsel experienced in complex class action litigation.

51. <u>Commonality</u>: Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting individual members of the class.

52. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the class predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the class do not have an interest in pursuing separate actions against Defendant, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against Defendant by any members of the class on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

## CLAIM FOR RELIEF
### *Failure to Provide Stand-Alone Disclosure*

53. Defendant violated the FCRA by procuring consumer reports on Plaintiff and class members without making the stand-alone disclosure required by the FCRA. *See* 15 U.S.C. § 1681b(b)(2).

54. Defendant acted willfully and in knowing or reckless disregard of its obligations and the rights of Plaintiff and the other class members. Defendant's willful conduct is reflected by, among other things, the fact that it violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(b)(2), and that Defendant certified that it would comply with 15 U.S.C. § 1681b(b)(2). Further:

  (a) The FCRA was enacted in 1970; Defendant has had over 40 years to become compliant;

  (b) Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

  (c) Defendant repeatedly and routinely uses the same unlawful documents it provided to Plaintiff with all of its employees on whom it procured consumer reports;

  (d) Despite the pellucid statutory text and there being a depth of guidance, Defendant systematically procured consumer reports without first disclosing in writing to the consumer *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and

  (e) By adopting such a policy, Defendant voluntarily ran a risk of violating

11

the law substantially greater than the risk associated with a reading that was merely careless.

55. Plaintiff and the class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A). Plaintiff and the class members are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2). Plaintiff and the class members are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## PRAYER FOR RELIEF

56. WHEREFORE, Plaintiff, on behalf of herself and the class, prays for relief as follows:

a. Determining that this action may proceed as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure;

b. Designating Plaintiff as Class Representative and designating Plaintiff's counsel as counsel for the class;

c. Issuing proper notice to the class at Defendant's expense;

d. Declaring that Defendant violated the FCRA;

e. Declaring that Defendant acted willfully, in knowing or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

f. Awarding statutory damages as provided by the FCRA;

g. Awarding punitive damages as provided by the FCRA;

h. Awarding reasonable attorneys' fees and costs as provided by the FCRA;

i. Granting all other available relief, in law and in equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

57. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the class demand a trial by jury.

BARTIMUS FRICKLETON ROBERTSON & GOZA

Dated: February 24, 2015                By /s/Anthony DeWitt

Anthony DeWitt, MO Bar No. 41612
715 Swifts Hwy
Jefferson City, MO 65109
Telephone: 573.659.4454
Facsimile: 573.659.4460
aldewitt@bflawfirm.com

NICHOLS KASTER, PLLP
E. Michelle Drake, MN Bar No. 0387366*
Anna P. Prakash, MN Bar No. 0351362*
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
drake@nka.com
aprakash@nka.com

STEPHAN ZOURAS, LLP
Ryan Stephan, IL Bar No. 6273101*
James Zouras, IL Bar No. 6230596*
205 North Michigan Ave
Suite 2560
Chicago, IL 60601
Telephone: 312-233-1550
rstephan@stephanzouras.com
jzouras@stephanzouras.com

**pro hac vice* applications forthcoming

**ATTORNEYS FOR PLAINTIFF**